UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
UNITED STATES OF AMERICA,


                              Plaintiff,                    **MEMORANDUM AND ORDER**
                                                           08 CV 1313 (DRH) (WDW)

              - against -


RODNEY MICHEL, as Executor for the
Estate of Helen Burger,


                              Defendant.
---------------------------------------------------------X
**APPEARANCES:**


**Attorneys for Plaintiff**
United States Department of Justice
Tax Division
Post Office Box 55, Ben Franklin Station
Washington, D.C. 20044
By:    Bartholomew Cirenza, Esq.


**Attorneys for Defendant**
Bythewood and Associates
1305 Franklin Avenue
Suite 200
Garden City, New York 11530
By:    David A. Bythewood, Esq.


**HURLEY, Senior District Judge:**

        The United States of America ("plaintiff" or the "government") commenced this action

against defendant Rodney Michel ("defendant") seeking to collect unpaid internal revenue taxes

through the judicial enforcement of an Internal Revenue Service ("IRS") levy.  The Court held a

final pretrial conference and scheduled a bench trial to commence on January 9, 2012.  By Order

dated January 3, 2012, however, the Court noted that neither party had adequately "framed the

issues that would be tried," and that it appeared that the action might be more appropriately

resolved by way of a summary judgment motion made by the government.  (*See* Jan. 3, 2012

Order at 1.)  Accordingly, the Court set a briefing schedule and adjourned the bench trial without date.

Presently before the Court are plaintiff's motion seeking summary judgment pursuant to Federal Rule of Civil Procedure 56, as well as defendant's cross-motion for summary judgment. For the reasons set forth below, plaintiff's motion is granted to the extent the government has established as a matter of law that defendant failed to honor the Notice of Levy served upon defendant on June 26, 1996 by improperly distributing estate assets to Robert Burger after that date, but is denied as to its concomitant request for summary judgment in the amount of $177,528.94 plus interest.[1]  Rather, the Court finds that defendant is liable to the government for at least $114,519.68, plus interest.  Defendant's cross-motion for summary judgment is denied.

### BACKGROUND

The following material facts are drawn from the parties' written submissions and are undisputed unless otherwise noted.[2]

---

[1]     The introductory paragraph of plaintiff's legal memorandum states that the government seeks damages in the amount of $176,099.14 plus interest.  (Pl.'s Mem. at 1.)  In other portions of plaintiff's papers, however, it states that it seeks $177,528.94 plus interest.  (*Id.* at 4, 5, 7, 8, 9.)  As set forth below, plaintiff's request for summary judgment in either amount is denied.

[2]     Local Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York requires a party opposing a motion for summary judgment to submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  Local Rule 56.1(b).  This Court's Individual Practice Rules contain the additional requirement that "the papers opposing a motion for summary judgment shall reprint the movant's numbered paragraphs before providing a responsive paragraph."  *See* Indiv. Practice Rule 3(k).  Defendant's opposition papers do not conform to these requirements.  However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."  *Holtz v. Rockefeller &*

*The Will and Estate at Issue*

Non-party Helen M. Burger died testate on August 14, 1995. Pursuant to the Last Will and Testament of Helen M. Burger, dated March 25, 1991 (the "Will"), the majority of her estate (the "Estate") was left to her "trustee, in trust, to be held, administered, managed, invested, and reinvested" as set forth in the Will. (Gov't Ex. 2 at ¶ 5.) Paragraph 15 of the Will named defendant as trustee. (*See id.* ¶ 15.)

The Will further provided, in relevant part:

> I direct my trustee, at least as often as annually or as often as monthly should he see fit, in the sole, absolute, and uncontrolled discretion of the trustee, to pay to or apply for the benefit of my son, Bob Burger, at least $1,000 per month but not more than 60% of the net income of the trust. In addition, the Trustee may pay to or apply for the benefits of my son Bob Burger such amount or amounts of the principal of the trust as the Trustee in his sole, absolute, and uncontrolled discretion deems necessary or desirable for the comfortable maintenance, support, health, education, and well being of my son Bob Burger and his sons Mark and Bobby.

(*Id.* ¶ 5.C.)

On November 8, 1995, the Surrogate's Court of the State of New York, Nassau County, entered a Decree of Probate of the Will. On the same day, defendant was appointed Executor for

---

*Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001). Thus, while the Court could deem each of plaintiff's factual statements admitted based upon defendant's failure to comply with Local Rule 56.1(b), *see* Local Rule 56.1(c), the Court will, in the exercise of its discretion, consider not only the uncontested facts set forth in plaintiff's Local Rule 56.1 Statement, but also the "other facts contained in the record." *See Di Rienzo v. Metro. Transp. Auth.*, 237 Fed. Appx. 642, 646 (2d Cir. June 20, 2007); *see also In re Parikh*, 2009 WL 2383032, at *2 (E.D.N.Y. July 30, 2009) (collecting cases). Defendant has also failed to file a Local Rule 56.1 Statement in support of his cross-motion for summary judgment, which constitutes "grounds for denial of the motion." *See* Local Rule 56.1(a). Even if the Court were to overlook defendant's failure to comply with Local Rule 56.1(a), defendant's cross-motion is denied in any event, for the reasons discussed in the text below.

the Estate, and was issued Letters Testamentary. On February 20, 1996, defendant was issued

Letters of Trusteeship for the trust created by the Will.

### The Tax Levy and Lien

By letter dated April 19, 1996, defendant was informed by his former attorney, Frederick

M. Reuss,[3] that "Bob Burger owes the Federal Government, (for various taxes) a total of

$246,579.91, as to which interest continues to accrue on a daily basis." (Gov't Ex. 8.) In his

letter to defendant, Reuss opined that: "Now that you are I are privy to that information, we

cannot fail to act with reference to it." (*Id.*) According to Reuss, "whatever is coming to Bob

Burger (no matter what the source) must go to his creditors first, insofar as those creditors have

us 'on notice'." (*Id.*)

On June 20, 1996, defendant was served with an IRS Notice of Levy and Notice of

Federal Tax Lien. (Gov't Exs. 5 & 6.) Defendant acknowledged his receipt of both documents

on that date with his signature. (*Id.*, Exs. 5 & 6.) The Notice of Levy listed federal income tax

liabilities and civil penalties that Robert Burger owed to the IRS for the tax years ending

December 31, 1979 through December 31, 1989, in an amount totaling $359,880.96. (Gov't Ex.

5.) The Notice of Levy further stated, in relevant part, "This levy requires you to turn over to us

this person's property and rights to property (such as money, credits, and bank deposits) that you

have or which you are already obligated to pay this person." (*Id.*)

---

[3]      Plaintiff asserts that Reuss, who is now deceased, was "representing [defendant]
in his capacity as Executor for the Estate." (Pl.'s 56.1 ¶ 11.) According to defendant, Reuss
"was the attorney representing the Estate of Helen Burger," but did not represent him as the
Executor. (*See* Aff. of Bishop Rodney Michel, dated Feb. 4, 2012 ("Michel Aff.") ¶ 5.) The
exact contours of Reuss's representation of defendant ultimately does not impact the Court's
analysis in any way.

By letter dated September 11, 1997, Reuss informed Robert Burger that Reuss "[would] not, in any event, advise . . . Michel to make any payments to you whatsoever [from the Estate]. He is forbidden to so do, by operation of law, he having been served with a 'Notice of Levy.'" (Gov't Ex. 9 at 1.)  Reuss further stated: "I now have to also advise . . . Michel that it is time to pay out the estate, pursuant to the terms of the Will.  This means, essentially speaking, that all which would go to you must go to the Internal Revenue Service." (*Id.*)  Reuss concluded by informing Burger that he would advise defendant "to move immediately to close the estate" in four weeks.  (*Id.*)  A copy of Reuss's September 11, 1997 letter to Robert Burger was also sent to defendant.  (*Id.* at 2.)

### Petition for Judicial Settlement of Account

On June 28, 1999, defendant, through his new attorney, Joseph F. Ruchala,[4] filed a Petition for Judicial Settlement of Account (the "Petition") in the Surrogate's Court.  (Gov't Ex. 10.)  The Petition indicated that, as of February 28, 1999, the Estate maintained "cash-on-hand in the amount of $295,881.57."  (Pl.'s 56.1 ¶ 12 (citing Gov't Ex. 10 at 7).)  By Order dated June 14, 2000, the Surrogate's Court denied the Petition, finding it "replete with errors."  (Gov't Ex. 11 at 3.)  The Surrogate's Court directed defendant "to start from the beginning and file a new accounting within sixty (60) days . . . and to move for its judicial settlement anew."  (*Id.* at 4.) There is no indication from the record whether such action was taken by defendant.

---

[4]       During his deposition in this case, defendant testified that Reuss became ill in 1997, and "there was a shift from Reuss to Ruchala" as of that time.  (Gov't Ex. 16 at 59.)  Reuss retired in 2000.  (*Id.* at 58.)

*Defendant's Alleged Distribution of Estate Funds and the Bank Accounts*

Defendant testified during his deposition in this case[5] that at some point either in 2000 or 2001, "Ruchala directed [him] to make the distribution . . . to the beneficiaries [of the Estate], because he said the IRS had been satisfied." (Gov't Ex. 16 at 59.) Defendant further testified as follows:

> Q: So Mr. Ruchala advised you to make a distribution to the beneficiaries being who?
>
> A: Rene Burger and Robert Burger.
>
> Q: So you actually signed checks payable to Robert and Rene Burger?
>
> A: I signed checks that were not completed. Before I signed them, I asked, specifically asked Ruchala, "Has the IRS levy been satisfied?" He said, "I have the document in the file."
>
> Q: Did he ever show it to you?
>
> A: He did not.
>
> Q: So you signed a blank check?
>
> A: I signed a blank check.
>
> Q: Two blank checks?
>
> A: Two blank checks.

---

[5] Defendant objects to plaintiff's citation to his deposition transcript because defendant "never had the opportunity to review the transcript for errors and to make any necessary corrections." (Def.'s Opp'n ¶ 6.) Rule 30(e) permits a deponent the opportunity to review and make any necessary changes to a deposition transcript when such is request is made "by the deponent or a party before the deposition is completed." Fed. R. Civ. P. 30(e). Defendant has not demonstrated that he made any such request before his deposition was completed or, for that matter, at any other time before he lodged his objection in the present motion papers. Accordingly, any rights plaintiff may have had under Rule 30(e) are deemed waived.

(Gov't Ex. 16 at 59-60.)

Records subpoenaed from CapitalOne Bank revealed the existence of an account, with an account number ending in -33062, that was held in the name of "Estate of Helen M. Burger, c/o Joseph F. Ruchala" (the "33062 Account"). (Gov't Exs. 12-15.) As of February 26, 2004, the 33062 Account had a balance of $145,228.79. (Gov't Ex. 12.) The subpoenaed records further revealed that five checks, all of which appear to have been signed by Ruchala,[6] were drawn on the 33062 Account and made payable to Robert Burger between 2003 and 2005: (1) $28,000 on December 2, 2003 (Gov't Ex. 12); (2) $30,000 on January 20, 2004 (Gov't Ex. 13); (3) $25,000 on July 12, 2004 (Gov't Ex. 14); (4) $11,519.68 on January 21, 2005 (Gov't Ex. 15); and (5) $20,000 on January 21, 2005 (*Id.*)

A second account, with an account number ending in -10003, also existed at CapitalOne Bank in the name of "Estate of Helen M. Burger, Rodney Michel Executor, c/o Joseph F. Ruchala" (the "10003 Account"). (Def.'s Ex. C.) Defendant acknowledges that he knew about the 10003 Account and asserts that the blank checks that he signed and gave to Ruchala after the Notice of Levy was served were drawn from the 10003 Account. (Michel Aff. ¶¶ 7, 10.) Defendant contends that he has "no actual knowledge of any other account that exists or may have existed for the Estate." (*Id.* ¶¶ 7, 9.)

---

[6]     Defendant denies that he signed these checks, and "guess[es]" that "[t]hey appear to have been signed by Joseph Ruchala." (Michel Aff. ¶11.)

## DISCUSSION

### I.     Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates both the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law.  *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994).  The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor.  *See Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," or "the substantive evidentiary standards that apply to the case."  *Anderson*, 477 U.S. at 254-55.   The court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-moving party.  *See Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987).   A district court considering a summary judgment motion must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the

respective parties will bear at trial guide the district court in its determination of a summary judgment motion. *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *See id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## II. General Principles Regarding the IRS's Levy Power

The IRS has at its disposal "two principal tools for the collection of delinquent taxes." *Celauro v. United States*, 411 F. Supp. 2d 257, 264 (E.D.N.Y. 2006). The first is a lien foreclosure suit, brought pursuant to 26 U.S.C. § 7403(a). *See id.* The second tool, relevant for purposes of this action, is the issuance of a levy, which "is a provisional remedy [that] generally 'does not require any judicial intervention.'" *Id.* (quoting *United States v. Rodgers*, 461 U.S. 677, 682 (1983)). Specifically, the IRS is authorized by statute to collect delinquent taxes "by levy upon all property and rights to property" belonging to the taxpayer. 26 U.S.C. § 6331(a); *see also Celauro*, 411 F. Supp. 2d at 264 ("Section 6331 provides a comprehensive scheme for the administrative enforcement of levy and distraint, or in other words, the administrative seizure and sale of a taxpayer's property and rights to property."). The purpose of the levy is to "protect[] the Government against loss or diversion of the subject property" while claims against the taxpayer "are being resolved." *Celauro*, 411 F. Supp. 2d at 264.

"In a situation where a taxpayer's property is held by another, a notice of levy upon the custodian is customarily served pursuant to [26 U.S.C.] § 6332(a)." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 720 (1985). "This notice gives the IRS the right to all property levied upon, and creates a custodial relationship between the person holding the property and the IRS so that the property comes into the constructive possession of the Government." *Id.* (internal citations omitted). A custodian who "surrenders such property or rights" in accordance with the levy is "discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property . . . ." 26 U.S.C. § 6332(e). If, however, the custodian "fails or refuses to surrender any property or rights to property, subject to levy," he "shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made . . . ." 26 U.S.C. § 6332(d)(1). "The constitutionality of the levy procedure, of course, 'has long been settled.'" *Nat'l Bank of Commerce*, 472 U.S. at 721 (quoting *Phillips v. Comm'r of Internal Revenue*, 283 U.S. 589, 595 (1931)).

### III.    Defendant's Liability

#### A.    Defendant did not Surrender Property to the IRS in Compliance with a Valid Notice of Levy

The "threshold question" in any case in which the government asserts a tax lien on a taxpayer's property held by a custodian "is whether and to what extent the taxpayer had 'property' or 'rights to property' to which the tax lien could attach." *Aquilino v. United States*, 363 U.S. 509, 512-13 (1960); *see also United States v. Marine Midland Bank, N.A.*, 675 F. Supp.

775, 780 (W.D.N.Y. 1987) ("[When examining] whether or not defendant has possession of a taxpayer's property or rights or interests in property subject to government levy . . ., it must be determined what interest, if any, the taxpayer had in the funds in question . . . ."). In resolving this threshold question, the Court "must look to state law." *Aquilino*, 415 F. Supp. at 218. Neither party has substantively addressed the issue of Robert Burger's property rights in the Estate, the assets of which, pursuant to the Will, were to be held in a trust.

Pursuant to New York law,[7] an analysis of the language of the relevant trust instrument is critical to determine a taxpayer's property rights in trust income or principal. *See, e.g.*, *Magavern v. United States*, 550 F.2d 797, 801 (2d Cir. 1977) (relying on "[t]he plain meaning" of the trust instrument's language"). The Second Circuit has held that a taxpayer has a property interest in trust income when the trust instrument "sets out in mandatory terms the trustee's duty to pay over." *Id.* Thus, when a trustee is required to make some payment of trust income to a taxpayer, even when the amount and timing of the mandatory income distribution is left to the trustee's discretion, the taxpayer has a property right in trust income that is subject to a tax levy. *See id.* (noting that the "trustee's discretion is not to determine who gets something, but rather to decide how much each is to be given"). Here, with respect to the trust income, the Will "direct[s]" defendant, as the trustee, to pay Robert Burger "at least $1,000.00 per month but not more than 60% of the net income of the trust." (Gov't Ex. 2 ¶ 5.C.) Because defendant's duty, as trustee, to pay out a certain amount of trust income is set forth in "mandatory terms," Robert Burger had a right to property in the trust income to which the government's tax levy could

---

[7] New York law applies here, as it is "the locus of the lien filings." *See Pulizzotto v. United States*, 1990 WL 120670, at *2 (D.N.J. July 10, 1990) (applying New York law).

attach.  *See Magavern*, 550 F.2d at 801.

The analysis is slightly different as to Robert Burger's right to property in the principal of the trust.  The Will provides: "In addition [to the trust income payments], the Trustee *may* pay to or apply for the benefit of my son Bob Burger such amount or amounts of the principal of the trust as the Trustee in his sole, absolute, and uncontrolled discretion deems necessary or desirable for the comfortable maintenance, support, health, education and well being of [Bob Burger and his sons]."  (Gov't Ex. 2 ¶ 5.C (emphasis added).)  Thus, although the Will requires the trustee to pay Robert Burger trust income, it leaves any decisions as to the distribution of trust principal entirely to the discretion of the trustee.  *See Pulizzotto*, 1990 WL 120670 at *3 ("Here although the will requires payment of trust income to the taxpayer, it merely gives the trustee the power to distribute the trust principal as she in her discretion deems 'advisable' . . . [and, thus,] the testatrix intended to treat the income and principal provisions of the trust separately . . . .").  Robert Burger, as the taxpayer, would have had no attachable right to property in the trust principal until the trustee decided to make a distribution of such principal to him.  As one court within this Circuit has explained:

> Once a trustee has determined to make a distribution, he has fulfilled the duty, and exercised the power granted by grantor . . . With the determination of the amount, which must precede delivery, even if it be by a scintilla in time, the beneficiary's expectancy is no longer inchoate but becomes an entitlement, a right to receive what the trustee determined to distribute.

*United States v. Cohn*, 855 F. Supp. 572, 576 (D.Conn. 1994).  Thus, a "perfected lien reaches amounts the trustee decides to distribute to [the taxpayer], so long as the lien remains in force and the tax liability . . . remains unpaid . . . ."  *Id.* at 576-77.

Thus, Robert Burger had some property rights to both trust income (i.e., "at least $1,000 per month but not more than 60% of the net income of the trust") and that portion of the trust principal, if any, that was distributed to him. This right to property was in the possession of defendant, as trustee of the trust and Executor of the Estate. It is undisputed that defendant did not surrender any levied property to the Government in compliance with Section 6332(a).[8] Therefore, defendant may avoid liability under Section 6332(d) only by bringing himself within one of two recognized statutory exceptions. *See United States v. DeCicco*, 170 F. Supp. 394, 395 (S.D.N.Y. 1959).

### B.       *Neither of the Recognized Defenses to Liability Under Section 6332 Apply*

The first potentially available defense is that defendant, "in the words of § 6332(a), is neither 'in possession of' nor 'obligated with respect to' property or rights to property belonging to the delinquent taxpayer." *Nat'l Bank of Commerce*, 472 U.S. at 722. As discussed above, Robert Burger had "property or rights to property," within the meaning of Section 6332(a), as to both a certain amount of trust income and that portion of the trust principal that was distributed to him. *See Magavern*, 550 F.2d at 801-02. Moreover, defendant has not asserted any convincing argument that he was not "in possession" of or "obligated with respect to" Robert Burger's rights to property at the time the Notice of Levy was served in June 1996.[9]

---

[8]       Defendant asserts, without any substantive discussion, that the documents attached to its Exhibit E demonstrate that "the lien of the plaintiff was released." (Def.'s Opp'n ¶ 4.) The referenced documents, however, show only that a notice of levy served upon the Social Security Administration was released – the cited documents do not refer at all to any release of the Notice of Levy that was served upon defendant. (*See* Def.'s Ex. E.)

[9]       Defendant contends that plaintiff has failed to proffer any evidence that the Notice of Levy and Notice of Lien were actually served upon him. (Def.'s Opp'n ¶ 8.) This assertion is unavailing, however, given that defendant's signature acknowledging receipt appears on each of

Defendant appears to assert that the existence of an "Escrow Agreement," signed by defendant and Attorney Ruchala and approved by a Chief of the Collection Division of the IRS on September 1, 1998, "proves that the person in control and possession was [ ] Joseph Ruchala . . . ." (Def.'s Opp'n ¶ 3.) The Court does not agree. The Escrow Agreement was drafted because the Estate wished to sell certain real property located at 1616 Belmont Avenue, New Hyde Park, New York, but the existence of the Notice of Levy and Notice of Federal Tax Lien was impeding the sale. (Def.'s Ex. A at 1.) To resolve this problem, the IRS agreed to issue a Certificate of Discharge of Property from the federal tax lien (*see* Def.'s Ex. E at 1) so that the property could be sold. (Def.'s Ex. A at 1.) In exchange, defendant and Ruchala agreed that the net proceeds from the sale of the property would be held in escrow, to be distributed only after an accounting was filed with the Surrogate's Court. (*Id.*) The Escrow Agreement memorializes this arrangement.

The existence or terms of the Escrow Agreement does not have any impact on the question of whether defendant was "in possession of" or "obligated with respect to" Robert Burger's property rights in the Estate within the meaning of Section 6332(a). Pursuant to the terms of the Will, defendant was both obligated to pay Robert Burger certain amounts of trust income at given intervals, and empowered to make discretionary distributions of trust principal to Robert Burger. *Accord Nat'l Bank of Commerce*, 472 U.S. at 724 (finding bank was "obligated with respect to" taxpayer's right to property when "state law required it to honor any withdrawal request [the taxpayer] might make"). Nothing in the Escrow Agreement changed the trustee's obligations in that regard. Thus, defendant may not avail himself of the first statutory defense.

the documents. (Gov't Exs. 5 & 6.)

The second potentially available defense, also drawn from the language of Section 6332(a), is that the taxpayer's property or rights to property at issue are "subject to an attachment or execution under any judicial process." *See Nat'l Bank of Commerce*, 472 U.S. at 722 (citing 26 U.S.C. § 6332(a)). Defendant has made no suggestion that this defense is applicable here. Because defendant cannot avail himself of either statutory defense, he is liable for his failure to surrender Robert Burger's levied property in compliance with Section 6332.

### C. *Defendant's Remaining Arguments are Unavailing*

#### 1. <u>Statute of Limitations</u>

Defendant contends that this action is barred by a ten-year statute of limitations. (Def.'s Opp'n ¶ 2; Def.'s Reply ¶ 5.) Section 6502(a) provides that a "tax may be collected by levy . . . but only if the levy is made . . . within 10 years after the assessment of the tax." 26 U.S.C. § 6502(a)(1). Importantly, "[a] levy that is made within this period of limitations remains enforceable to the extent of the value of the levied-upon property even if the person who receives the levy does not surrender the subject property within that period." *CPS Elec., Ltd. v. United States*, 200 F. Supp. 2d 120, 123 (N.D.N.Y. 2002) (citing *United States v. Weintraub*, 613 F.2d 612, 620 (6th Cir. 1979) *and* 26 C.F.R. § 301.6343-1(b)(1)); *see also Marine Midland Bank, N.A.*, 675 F. Supp. at 778 (finding the limitations period in Section 6502 "does not apply to section 6332 actions against third parties in possession of a taxpayer's property or property rights" because Section 6332 actions "are not actions to collect tax but to enforce personal liability for failure to surrender property after receiving notice of levy"). Here, the IRS served the Notice of Levy within ten years of each tax assessment made against Robert Burger. (*See* Gov't Ex. 6 (showing that the earliest tax assessment was November 17, 1986).) Because the Notice of

Levy was served upon defendant in a timely fashion, it remains enforceable even though the

present action was commenced outside the ten-year limitations period.  *See CPS Elec., Ltd.*, 200

F. Supp. 2d at 124.

### 2. <u>Failure to Join a Necessary Party</u>

Defendant further contends that plaintiff failed to join a necessary party – Attorney

Joseph Ruchala – pursuant to Rule 19(a)(1) and (2).  Rule 19(a) "defines those parties who are

'necessary' to an action."  *Jonesfilm v. Lion Gate Int'l*, 299 F.3d 134, 139 (2d Cir. 2002), and it

provides as follows:

> a) Persons Required to Be Joined if Feasible.
>
> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>>
>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>
>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>>
>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).  If a person who is "necessary" under Rule 19(a) cannot be joined, "the

district court must determine whether the claim should be dismissed because the necessary party

is 'indispensable.'" *Jonesfilm*, 299 F.3d at 139.[10]  Thus, the first analytical step involves a determination whether Ruchala is a necessary party.

As noted above, Rule 19(a) sets forth two standards for determining whether a party is "necessary."  Under the first standard, a party is necessary only if in that party's absence, "the court cannot accord complete relief *among existing parties*."  Fed. R. Civ. P. 19(a)(1)(A) (emphasis added).  Defendant has not substantively addressed whether or how Ruchala's absence from the case would deprive the Court of its ability to accord complete relief among the existing parties.  To be sure, defendant may wish to commence a separate action against Ruchala for indemnification or fraud.  Here, however, Ruchala's presence is not necessary to accord complete relief between the Government and defendant.  The IRS has brought an enforcement action against defendant, as Executor of the Estate, based upon his failure to surrender property subject to an IRS levy.  A determination as to defendant's liability under Section 6332 will provide complete relief between the parties.

Nor is Ruchala a necessary party under the second standard of Rule 19, because he has not "claim[ed] an interest relating to the subject of the action . . . ."  Fed. R. Civ. P. 19(a)(1)(B).  Where, as here, the purportedly necessary party has not moved to join the instant litigation, this subsection of Rule 19(a) is inapplicable.  *See Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 48 (2d Cir.1996) ("[Defendant's] attempt to assert on behalf of the Ministry its supposed concern

---

[10]        The Second Circuit has noted that as of the December 1, 2007 amendments to the Federal Rules of Civil Procedure, Rule 19 "no longer uses the term 'indispensable.'" *CP Solutions PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 159 n.2 (2d Cir. 2009).  However, because the prior version of the Rule used this term, and thus much of the interpretive case law contains this term, and because "[t]here is no substantive difference between the present rule and the rule as applied by [courts] prior to the 2007 amendment," it is appropriate to reference "indispensable" parties as part of a Rule 19 analysis.  *See id.*

about the dilution of its interest . . . falls outside the language of the rule. It is the absent party that must 'claim an interest.'"); *see also Reit v. Post Props., Inc.*, 2010 WL 743533, at *3 (S.D.N.Y. Feb. 24, 2010) ("It is the absent party that must claim an interest, and no such party has done so here.") (internal alterations and quotation marks omitted).

### 3.    Lack of Intentional or Negligent Conduct by Defendant

Defendant asserts that his failure to surrender Robert Burger's levied property to the government in compliance with Section 6332 was neither intentional or negligent. (Def.'s Opp'n ¶ 2.) To that end, defendant denies any knowledge of the 33062 Account and, by extension, any payments of Estate monies that may have been made to Robert Burger from that account. (*See id.* ¶ 3.) Defendant has failed, however, to show that the absence of intentional or negligent conduct on his part is relevant to the question of whether a Section 6332 enforcement action may be maintained against him. The Court has no reason to doubt defendant's representations that he acted in good faith when he signed two blank checks drawn on the Estate's account and entrusted those checks to Ruchala for the purpose of making distributions to the Estate's beneficiaries. However, good faith does not absolve defendant of liability for failure to comply with his statutory obligations to surrender property pursuant to a valid IRS Notice of Levy. There are only two available defenses to a Section 6332 enforcement proceeding – as discussed above, defendant has not shown that he can avail himself of either of them.

### IV.    *The Amount of Damages Due*

As discussed above, there is no issue of fact regarding defendant's liability to plaintiff under Section 6332 for some amount of money. The government's assertion as to the amount of money to which it is entitled, however, is problematic. Plaintiff asserts that defendant is liable

for $177,528.94, plus interest. (Pl.'s Mem. at 9.) According to plaintiff, the Petition reveals that as of February 28, 1999, "defendant maintained cash-on-hand for the Estate totaling $295,881.57." (*Id.* at 4.) Plaintiff maintains that "[s]ixty percent of the $295,881.57 belonged to Robert Burger under the [Will], which amount totals $177,528.94" and is less than the federal income tax liabilities due and owing as of the date of service of the Notice of Levy. (*Id.* ¶¶ 13, 14.)

This assertion is problematic for numerous reasons. First, plaintiff's position that Robert Burger is entitled to sixty percent of the Estate does not dovetail with the Will's language. As discussed above, the Will directs the trustee to pay Robert Burger "at least $1,000 per month but not more than 60% of the *net income* of the trust." (Gov't Ex. 2 at ¶ 5.C (emphasis added).) "In addition," the Will vests the trustee with discretion to pay Robert Burger "such amount or amounts of the principal of the trust" as the trustee deems "necessary or desirable" for Robert Burger's "comfortable maintenance, support, health, education and well being." (*Id.*) Thus, the government's position that it can determine the amount of Robert Burger's property right in the Estate by simply calculating sixty percent of the Estate's so-called "cash-on-hand" is incorrect.[11]

The more appropriate method for calculating defendant's liability must begin with a determination as to the amount of money actually distributed from the Estate to Robert Burger after the Notice of Levy was served. *See Cohn*, 855 F. Supp. at 577-78. As described above, Robert Burger had property rights, to which a tax levy could attach, to a certain amount of trust

---

[11] Furthermore, any reliance by plaintiff on the Petition to calculate the amount of money defendant owes is problematic because on June 14, 2000, the Surrogate's Court denied the Petition because it was "replete with errors." (Gov't Ex. 11 at 3.) Plaintiff has not explained why the Court should rely on this Petition to calculate an appropriate amount of damages.

income (i.e., "at least $1,000 per month but not more than 60% of the net income of the trust") as well as that portion of the trust principal which was distributed to him. The CapitalOne documents show that five checks, in the total amount of $114,519.68, were drawn on the 33062 Account and made payable to Robert Burger between 2003 and 2005. (Gov't Ex. 12-15.) During his deposition in this action, Ruchala confirmed that he had withdrawn money from a bank account held by the Estate and paid Robert Burger approximately $100,000. (Ruchala Dep. at 34-36.) Although there is no indication from the record as to whether this payment was intended to be a distribution of trust income or a discretionary distribution of trust principal, defendant is liable for those distributions in either event because they were made after the Notice of Levy was served. *See Cohn*, 855 F. Supp. at 577-78 (finding trustee liable under Section 6332 "to the extent of such distributions" made to taxpayer/trust beneficiary after service of the Notice of Levy).

Defendant asserts that Ruchala – not defendant, as trustee – signed the checks in question, and impliedly argues that defendant should not be liable to the government for those distributions. (*See* Michel Aff. ¶ 11.) The Court is unpersuaded by this argument. It is undisputed that at some point after the Notice of Levy was served defendant authorized Ruchala to make distributions of Estate funds to the Estate's beneficiaries, including Robert Burger. (Gov't Ex. 16 at 59-60.) Further, defendant did not give Ruchala any instruction (or limitation) as to the amount of distributions to be made, as is evidenced by the fact that defendant signed two blank checks drawn on the 10003 Account and gave them to Ruchala for the purpose of

making such distributions.  (Michel Aff. ¶ 10.)[12]

It is well-settled that the "[a]dministration of a trust normally rests with the trustee." *In re Lloyd's Am. Trust Fund Litig.*, 954 F. Supp. 656, 681 (S.D.N.Y. 1997).  "A trustee is under a duty to employ diligence and prudence in the management of the trust estate." *Sacher v. Beacon Assocs. Mgmt. Corp.*, 2010 WL 1881951, at *9 (N.Y. Sup. Ct. Apr. 26, 2010) (citing *In re Marine Midland Bank*, 127 A.D.2d 999, 999-1000 (4th Dep't 1987)).  As an initial matter, it is unclear whether a trustee may, as defendant did, delegate the "discretionary power to determine the recipients or amounts of distributions to be made to one or more beneficiaries."  *See* Restatement (Third) of Trusts § 80 cmt f(3) (2007).  Even assuming *arguendo* that defendant properly delegated this duty to Ruchala, he retained an obligation to "ascertain within a reasonable time whether an agent to whom he has delegated a trust power is properly carrying out his responsibilities." *Whitfield v. Cohen*, 682 F. Supp. 188, 196 (S.D.N.Y. 1988).  Overall, a "trustee is personally liable to [ ] third parties for injuries caused by the negligence of a servant employed in the administration of the trust, and his liability is predicated upon the ordinary principles of agency."  *In re Lather's Will*, 137 Misc. 226, 233 (N.Y. Surr. Ct. 1930).  Given these principles, the Court finds that defendant's liability under Section 6332(d) is not impacted by either defendant's claim that he did not know about the 33062 Account, or the fact that

---

[12]     Based on the record evidence presented, the Court cannot determine what ultimately happened with those two blank checks.  Defendant asserts that a copy of one of those checks is attached as Exhibit B to his papers.  The government does not dispute this, although the Court notes that the check, dated May 16, 1997, appears to pre-date Ruchala's involvement in the case.  Even assuming *arguendo* that Exhibit B is a copy of one of the two blank checks signed by defendant and given to Ruchala, it was not used to make a distribution to Robert Burger and is, therefore, irrelevant for present purposes.  (*See* Def.'s Ex. B (photocopy of check, dated May 16, 1997, signed by defendant and made payable to Wendover Funding Inc. in the amount of $77,041.49).)

Ruchala – and not defendant – signed the five checks that were drawn from the 33062 Account and made payable to Robert Burger.[13]

Thus, the Court rejects the government's claim that defendant is liable for $177,528.94, but finds that liability shall be imposed upon defendant for the amount of $114,519.68, which is the total amount of money that was distributed from the 33062 Account to Robert Burger between 2003 and 2005. To the extent the government wishes to address whether Robert Burger had a property right to additional trust income, i.e., beyond that which is included in the $114,519.68 distribution, and therefore that such money was also subject to the Notice of Levy and should have been surrendered by defendant, the government may address this issue in a supplemental filing, as described below.

---

[13] Defendant argues that nothing in the CapitalOne Bank records "establish[es]" that the "Estate of Helen M. Burger" listed as the holder of the 33062 Account is the decedent relevant to our case, or that the checks drawn on the 33062 Account were paid to the "very same Robert Burger" who is relevant to our case. (Def.'s Opp'n ¶¶ 9, 10.) The government's subpoena, which required CapitalOne Bank to produce all documents relating to both the 10003 and 33062 Accounts (Def.'s Ex. C), was served on August 8, 2010 – approximately five months after defendant's current counsel filed a Notice of Appearance. The Court notes that defendant did not object to or move to quash the subpoena or otherwise assert that the 33062 Account listed on the subpoena did not belong to the Estate. Further, a CapitalOne Bank representative has signed a declaration under penalty of perjury, stating that the documents produced in response to the subpoena were maintained and produced in accordance with Federal Rules of Evidence 803(6) and 902(11). The Court, therefore, declines defendant's invitation to reject these documents as lacking a proper foundation.

## *CONCLUSION*

For the reasons set forth above, defendant's cross-motion for summary judgment is denied. Plaintiff's motion for summary judgment is granted in part to the extent that the government has established defendant's liability as a matter of law, but denied in part to the extent it requests judgment in the amount of $177,528.94 plus interest. Rather, the Court finds that defendant is liable to plaintiff in the amount of $114,519.68, plus interest at the underpayment rate set forth in 26 U.S.C. § 6621(a)(2), which interest would run from the date of service of the Notice of Levy until the entry of judgment. To the extent the government wishes to submit supplemental briefing as to its entitlement to additional Estate money to which Robert Burger had a property right (i.e., additional trust income beyond the money actually distributed to him), such supplemental briefing shall be submitted on or before August 23, 2012. Any response by defendant shall be submitted on or before September 24, 2012. If the government does not wish to submit supplemental briefing, it shall so inform the Court. In that event, judgment will be entered and the case will be marked as closed.

**SO ORDERED.**

Dated: Central Islip, New York
      July 23, 2012                         _____/s/_____
                                                Denis R. Hurley
                                                Unites States District Judge